IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUARY L. SHUFORD, | No. 2:22-CV-1490-DAD-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| D. BAKER, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's complaint, ECF No. 1. Also before the Court is Plaintiff's request, ECF No. 8, to correct the name of the lead defendant to "D. Baker" from "B. Baker."

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). This provision also applies if the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody. See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that

1

complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants: (1) D. Baker, (2) A. Gonzales; (3) M. Saetenurn; and (4) J. Lebeck.  See ECF No. 1, pg. 2.  All defendants are alleged to be correctional staff at California State Prison – Sacramento.  See id.  In his first claim for relief, Plaintiff alleges that Defendant Baker violated his First Amendment rights by confiscating items sent to him by his wife.  See id. at 3.  Plaintiff also claims this resulted in a violation of his rights to freedom of religious expression as he worships his wife and considers items sent to him from her as religious gifts.  See id.  In his second claim for relief, Plaintiff alleges that Defendant Baker physically attacked him, in violation of his rights under the Eighth Amendment.  See id. at 4.

## II. DISCUSSION

The Court finds that Plaintiff has stated a cognizable Eighth Amendment excessive force claim against Defendant Baker.  Plaintiff has not, however, stated any cognizable claims against Defendant Baker under the First Amendment, nor has Plaintiff stated any claims against any other named defendants.  For the reasons discussed below, Plaintiff will be provided an opportunity to amend.

/ / /

/ / /

### A. Causal Link

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

In addition to Baker, Plaintiff names A. Gonzales, M. Saetenurn, and J. Lebeck. Plaintiff has not, however, alleged any facts as to Gonzales, Saetenurn, or Lebeck. All of Plaintiff's factual allegations concern Defendant Baker. Plaintiff will be provided an opportunity to explain how Gonzales, Saetenurn, and Lebeck participated in a violation of Plaintiff's constitutional rights.

### B. First Amendment

#### 1. Confiscation of Items

Plaintiff claims that Defendant Baker improperly confiscated items sent through the mail by his wife. Prisoners have a First Amendment right to send and receive mail. See Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). Prison officials may intercept and censor outgoing mail concerning escape plans, proposed criminal activity, or encoded messages. See Procunier v. Martinez, 416 U.S. 396, 413 (1974); see also Witherow, 52 F.3d at 266. Based on security concerns, officials may also prohibit correspondence between inmates. See Turner v. Safley, 482 U.S. 78, 93 (1987).

///

///

Here, while Plaintiff might have a plausible claim, he does not currently state sufficient facts for the Court to so find.  Plaintiff has not, for example, alleged what items were sent, which were confiscated, and why.  Plaintiff will be provided an opportunity to amend to allege additional facts which might shed light on the dimensions of Plaintiff's claim relating to items sent to him in the mail.

### 2. Freedom of Religion

The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion.  See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); see also Pell v. Procunier, 417 U.S. 817, 822 (1974).  Thus, for example, prisoners have a right to be provided with food sufficient to sustain them in good health and which satisfies the dietary laws of their religion.  See McElyea v. Babbit, 833 F.2d 196, 198 (9th Cir. 1987).  In addition, prison officials are required to provide prisoners facilities where they can worship and access to clergy or spiritual leaders.  See Glittlemacker v. Prasse, 428 F.2d 1, 4 (3rd Cir. 1970).  Officials are not, however, required to supply clergy at state expense.  See id.  Inmates also must be given a "reasonable opportunity" to pursue their faith comparable to that afforded fellow prisoners who adhere to conventional religious precepts.  See Cruz v. Beto, 405 U.S. 319, 322 (1972).

However, the court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and valid penological objectives.  See McElyea, 833 F.2d at 197.  For instance, under the First Amendment, the penological interest in a simplified food service has been held sufficient to allow a prison to provide orthodox Jewish inmates with a pork-free diet instead of a completely kosher diet.  See Ward v. Walsh, 1 F.3d 873, 877-79 (9th Cir. 1993).  Similarly, prison officials have a legitimate penological interest in getting inmates to their work and educational assignments.  See Mayweathers v. Newland, 258 F.3d 930, 38 (9th Cir. 2001) (analyzing Muslim inmates' First Amendment challenge to prison work rule).

///
///
///

While free exercise of religion claims originally arose under the First Amendment, Congress has enacted various statutes in an effort to provide prisoners with heightened religious protection. See Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005). Prior to these congressional efforts, prison free exercise claims were analyzed under the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987); see e.g. O'Lone, 382 U.S. at 349. The first effort to provide heightened protection was the Religious Freedom Restoration Act (RFRA) of 1993. However, the Supreme Court invalidated that act and restored the "reasonableness test." See City of Boerne v. P.F. Flores, 521 U.S. 507 (1997); see also Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's decision in City of Boerne invalidated RFRA and restored the "reasonableness test" as the applicable standard in free exercise challenges brought by prison inmates).

Congress then enacted the Religious Land Use and Institutionalized Persons Act (RLUIPA) in 2000 ". . . in response to the constitutional flaws with RFRA identified in City of Boerne." Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 985 (9th Cir. 2006). Under RLUIPA, prison officials are prohibited from imposing "substantial burdens" on religious exercise unless there exists a compelling governmental interest and the burden is the least restrictive means of satisfying that interest. See id. at 986. RLUIPA has been upheld by the Supreme Court, which held that RLUIPA's "institutionalized-persons provision was compatible with the Court's Establishment Clause jurisprudence and concluded that RLUIPA 'alleviates exceptional government-created burdens on private religious exercise.'" Warsoldier, 418 F.3d at 994 (quoting Cutter v. Wilkinson, 125 S.Ct. 2113, 2117 (2005)). Congress achieved this goal by replacing the "reasonableness test" articulated in Turner with the "compelling government interest" test codified in RLUIPA at 42 U.S.C. § 2000cc-1(a). See id.

It is not clear whether a prisoner must specifically raise RLUIPA in order to have his claim analyzed under the statute's heightened standard. In Alvarez v. Hill, the Ninth Circuit held that, if a complaint contains "factual allegations establishing a 'plausible' entitlement to relief under RLUIPA, [plaintiff has] satisfied the minimal notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure." 518 F.3d 1152, 1157 (9th Cir. 2008); but see

Henderson v. Terhune, 379 F.3d 709, 715 n.1 (9th Cir. 2004) (declining to express any opinion about whether plaintiff could prevail under RLUIPA because plaintiff brought his claim under the First Amendment only). Therefore, it is possible for a prisoner's complaint to raise both a First Amendment claim and RLUIPA claim based on the same factual allegations. In other words, even if the plaintiff does not specifically invoke the heightened protections of RLUIPA, he may nonetheless be entitled to them. Under Henderson, however, the plaintiff's claim may be limited to the less stringent Turner "reasonableness test" if the plaintiff specifically brings the claim under the First Amendment only.

Under both the First Amendment and RLUIPA, the prisoner bears the initial burden of establishing that the defendants substantially burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith. See Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (analyzing claim under First Amendment); see also Warsoldier, 418 F.3d at 994-95 (analyzing claim under RLUIPA). While RLUIPA does not define what constitutes a "substantial burden," pre-RLUIPA cases are instructive. See id. at 995 (discussing cases defining "substantial burden" in the First Amendment context). To show a substantial burden on the practice of religion, the prisoner must demonstrate that prison officials' conduct ". . . burdens the adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates." Graham v. Commissioner, 822 F.2d 844, 850-51 (9th Cir. 1987). The burden must be more than a mere inconvenience. See id. at 851. In the context of claims based on religious diets, a plaintiff must prove that prison officials refused to provide a diet which satisfies his religious dietary laws or that the available prison menu prevented him from adhering to the religious dietary laws mandated by his faith. See Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir. 1995).

Under the First Amendment "reasonableness test," where the inmate shows a substantial burden the prison regulation or restriction at issue is nonetheless valid if it is reasonably related to a legitimate penological interest. See Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (citing Turner, 482 U.S. at 89). In applying this test, the court must weight four

factors: (1) whether there is a rational connection between the regulation or restriction and the government interest put forward to justify it; (2) whether there are available alternative means of exercising the right; (3) whether accommodation of the asserted religious right will have a detrimental impact on prison guards, other inmates, or the allocation of limited prison resources; and (4) whether there exist ready alternatives to the regulation or restriction. See id.; see also Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987).

Under RLUIPA, the government is required to ". . . meet the much stricter burden of showing that the burden it imposes on religious exercise is 'in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest.'" Green v. Solano County Jail, 513 F.3d 992, 986, 989 (9th Cir. 2008) (citing 42 U.S.C. § 2000cc-1(a)(1)-(2) and 2(b)); see also Warsoldier, 418 F.3d at 994-95. Prison security is an example of a compelling governmental interest. See Green, 513 F.3d at 989 (citing Cutter, 125 S.Ct. at 2113 n.13). In establishing that the regulation or restriction is the least restrictive means to achieve a compelling governmental interest, prison officials must show that they actually considered and rejected the efficacy of less restrictive means before adopting the challenged practice. See Green, 513 F.3d at 989 (citing Warsoldier, 418 F.3d at 999).

Here, Plaintiff has failed to allege facts to show what religious faith he practices or how his practice of that faith was substantially burdened by not being allowed to have various items sent to his by his wife as "religious gifts." Again, Plaintiff will be provided an opportunity to amend.

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An

amended complaint must be complete in itself without reference to any prior pleading.  See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state a cognizable Eighth Amendment excessive force claim against Defendant Baker, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's request, ECF No. 8, to correct is granted; and

2. Plaintiff may file a first amended complaint within 30 days of the date of service of this order.

Dated:  January 27, 2023

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE